```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


FREDERICK AUGUST TUJAGUE,              CIVIL ACTION
III

VERSUS                                 NO: 05-2733

ATMOS ENERGY CORPORATION               SECTION: "S" (2)
```

ORDER AND REASONS

IT IS HEREBY ORDERED that defendant Atmos Energy Corporation's ("Atmos"), motion for summary judgment, seeking the court's determination that plaintiff Frederick August Tujague's ("Tujague") suit is barred by the Louisiana law of liberative prescription, is DENIED. (Document #5).

I. BACKGROUND

Tujague alleges a cause of action for damages based on trespass arising out of Atmos' installation of a six-inch natural gas pipeline on Tujague's property along La. Hwy. 1085 without

his permission.[1]  Tujague alleges that he discovered the trespass in August 2003 when he noticed yellow flags on portions of his property.  Tujague's affidavit recites that Atmos laid a natural gas pipeline and placed debris on portions of his property, and that although the pipeline and some of the debris were removed, some debris still remains.

Tujague alleges that the presence of the pipeline and debris on his property was a continuing trespass or continuing tort and, therefore, prescription did not begin to run until the pipeline and debris were removed.  In the alternative, Tujague contends that Atmos acknowledged Tujague's rights in an August 20, 2004 letter to Tujague's attorney, interrupting prescription under Article 3464 of the Louisiana Civil Code.

Tujague commenced this action in state court against Atmos on June 8, 2005.[2]  Atmos removed the case to this court based on diversity jurisdiction, and filed its answer and affirmative defenses.  Atmos now moves the court to dismiss the case,

---

[1]The pipeline was subsequently relocated to the state highway right of way, and the abandoned pipe was removed from Tujague's property.  The date the removal occurred is disputed in Atmos' latest submission, and Atmos asks for leave to establish that the date of removal was March 2004, rather than August 2004 as alleged by Tujague.

[2]The petition alleges that "[t]he pipeline caused damage to Tujague in that it removed and/or destroyed trees, lowered property values, made development of the property impossible and posed potential safety hazards."  Document #1-2.

contending that it is barred by the Louisiana law of liberative prescription under Article 3493 of the Louisiana Civil Code, which provides "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage."

## II.  DISCUSSION

The Supreme Court of Louisiana, in explaining the difference between an ordinary tort and a continuing tort, has drawn a distinction between continuous and discontinuous operating causes:

> [W]here the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage.  However, in cases where property has been injured or damaged, and the continuing tort theory is inapplicable, either because the operating cause of the injury is discontinuous or because the damages are not successive, prescription runs from the date that knowledge of such damage was apparent or should have been apparent to the injured party.

*Crump v. Sabine River Authority,* 737 So. 2d 720, 726 (La. 1999) (citing A.N. YIANNOPOULOS, PREDIAL SERVITUDES § 63 (1983)).  The Court in *Crump* clarified that "[a] continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owned to the plaintiff and a continuing breach of that duty by the defendant."  *Id.* at 728.

The Court has subsequently held that "[w]hen a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action. *In re Medical Review Panel for Claim of Moses,* 788 So. 2d 1173, 1183 (La. 2001).

Atmos relies on *Crump* for its contention that there was no continuing tort, arguing that all of Tujague's alleged damage was the result of a single injury producing event, which was the installation of the pipeline. Atmos also contends that because Tujague discovered the alleged trespass in August 2003, even if the damages occurred as a result of the continuing presence of the pipeline and debris, prescription began to run as of the date of discovery.

In *Crump,* the plaintiff owned property through which the McDonald Bayou flowed. *Id.* at 723. In 1971, a canal was dug on adjoining property that resulted in the flow of water being diverted away from the portion of the bayou on which plaintiff's property fronted. The plaintiff argued that the existence of the canal constituted the operating cause of daily injury because its presence caused a continuous diversion of the flow of water away from her property. *Id.*

The Court held that the actual digging of the canal was the

4

single operating cause of the injury. *Id.* at 727-28. The continuous diversion of water from the bayou was considered by the Court to be the continuing ill effect of the original wrongful act. *Id.* The Court further reasoned that:

> [T]he defendant's duty to remove the canal would stem from its obligation . . . to repair the damage caused by its tortious conduct. However, the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor.

*Id.* at 729. Thus, the Court concluded that the continuing tort doctrine could not be applied under the facts of the case to suspend the running of prescription. *Id.*

Tujague controverts the application of *Crump*, arguing that it does not apply to instances when the defendant trespasses, erects a structure, or deposits something onto the plaintiff's property. Accordingly, Tujague contends that *Crump* is not controlling. Tujague argues *Cooper v. Louisiana Department of Public Works*, 870 So. 2d 315 (La. App. 3 Cir.), *cert. denied,* 882 So. 2d 1146 (La. 2004), is applicable. In *Cooper,* the plaintiffs brought an action against the Department of Transportation and Development, alleging that they had suffered damages resulting from the permanent flooding of portions of their land caused by the construction of locks and dams. The defendant averred that the plaintiffs' claims had prescribed because they were aware of

the flooding for more than twenty years.  *Id.* at 321.  The plaintiffs asserted that their claims had not prescribed because the flooding constituted a continuing tort.  *Id.* at 322.

The Court of Appeal distinguished *Cooper* from *Crump*.  The Court emphasized that the continuing tort theory did not apply in *Crump* "because the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act, the digging of the canal."  *Id.* at 323.  In *Cooper*, however, the complained of action was "the *constant* interference with their servitudes of drainage, causing the *permanent* flooding of [plaintiffs] lands."  *Id.* (emphasis added).  Thus, the Court ruled that prescription would not run until the flooding of the plaintiffs' lands was abated, noting that the case was analogous to *Estate of Patout v. City of New Iberia,* 708 So. 2d 526 (La. App. 3 Cir. 1998).  The Supreme Court denied certiorari.  *Cooper v. Louisiana Department of Public Works*, 882 So. 2d 1146 (La. 2004).

In *Patout,* the City operated a landfill on property adjacent to the plaintiffs' land from the early 1970s through October 1989.  *Id.*  During those years, the City pushed garbage onto the plaintiffs' property.  *Id.* at 527.  The plaintiffs sued the City of New Iberia for trespass on their immovable property over that period of time.  *Id.* at 531.

The Court of Appeal held that the continued presence of the garbage on plaintiffs' property constituted a continuing trespass and that prescription would not begin to run until the garbage was removed.  *Id.* at 531.  The Court relied on *South Central Bell Telephone Company v. Texaco, Inc.,* 418 So. 2d 531 (La. 1982), in which the tortious conduct was the continuous leaking of gasoline from damaged storage tanks into a manhole containing plaintiff's telephone cables.  The Supreme Court in *South Central Bell* held:

> When the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damage is abated.  The damage did not end merely because South Central Bell decided that all of its cables would eventually have to be replaced.  Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage.

*Id.* at 533.  Thus, prescription did not begin to run until the offending tanks were replaced, thereby stopping the leaks.

The Court of Appeal in *Estate of Patout* cited PROSSER AND KEATON ON THE LAW OF TORTS:

> The ordinary trespass is complete when it is committed; the cause of action accrues, and the statute of limitations begins to run at that time, although the consequences may be a permanent injury to the land.  But in many cases, as where the defendant erects a structure or *dumps rubbish on the land of the plaintiff, the invasion is continued by a failure to remove it.*  In such a case, there is a continuing wrong so long as the offending object remains.

*Estate of Patout*, 708 So. 2d at 531 (quoting W. PAGE KEATON ET AL.,

7

PROSSER AND KEATON ON THE LAW OF TORTS § 13, at 83 (5th ed. 1984) (emphasis added)).

After going from the District Court to the Court of Appeal and back on issues not pertinent to this discussion, the Supreme Court remanded the case to the Court of Appeal for a determination of the date on which prescription began to run in light of the *Crump* decision. The Court of Appeal concluded that *Crump* was "distinguishable" from *Estate of Patout*, and restated its previous ruling that "the City's trespass on the plaintiffs' immovable property continues by virtue of its failure to remove the deposited garbage," holding that prescription would not begin to run until the garbage was removed from the plaintiffs' property.[3] The Supreme Court denied certiorari. *Estate of Patout v. City of New Iberia*, 813 So. 2d 1248, 1253 (La. App. 3 Cir.), *cert. denied,* 819 So. 2d 335 (La. 2002).

*Crump* is distinguishable from *Cooper* and *Estate of Patout*. In *Crump,* there was no trespass on the plaintiff's land. Rather, there was a single tortious act, which was the digging of a canal on property that the plaintiff did not own. The resulting diversion of water from the plaintiff's property was a cause of

---

[3]*See also, Dore v. Jefferson Guar. Bank,* 543 So. 2d 560 (La. App. 4 Cir. 1989) (holding refuse left on plaintiff's property was a continuing trespass until removed from premises.)

progressively worsening damage but did not constitute a successive cause of action, and was not a continuing tort.

*Cooper* concerned the construction of locks and dams on property that was not owned by the plaintiffs. The presence of locks and dams interfered with the plaintiffs' servitude of drainage. Because the interference was continuous, the Court found a continuing tort and therefore held that prescription did not begin to run until the interference abated.

In *Estate of Patout,* the tortious act complained of was the depositing of debris on property owned by the plaintiffs. The debris deposited by the tortious act of trespass continued to exist, and the damages continued to be sustained because the debris was never removed. As in *Cooper,* the continuing tort doctrine is applicable because there was a continuing wrong giving rise to successive damages.[4]

---

[4] Two other cases similar to this case are *Terral v. Poole,* 484 So. 2d 227 (La. App. 3 Cir. 1986), and *Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Company,* 347 So. 2d 266, 267 (La. App. 4 Cir. 1977). *Terral* concerned trespass caused by debris and the placing of a sewer line on the plaintiffs' property. The defendant cleared an area on his property for the installation of a mobile home, and while doing so, pushed debris onto the plaintiffs' property. Terral, 484 So. 2d at 228. In addition, 72 feet of a sewer line for the septic tank was placed on the plaintiffs' property. The Court of Appeal concluded that the trial court correctly ruled that the trespasses were continuing as long as the debris and sewer line remained on their property. *Id.* In *Neyrey,* Court of Appeal held that "a trespass committed by illegally erecting a structure on

In this case, Atmos owed Tujague a duty not to trespass upon his property. Atmos breached this duty when it placed the pipeline and debris upon Tujague's property without his permission, and the breach continued until those items were removed. The trespass was a continuing tort and did not cease, and prescription did not begin to run, until the pipeline and debris were removed from Tujague's property. If Tujague filed this suit within one year of the pipeline's removal, his suit is not prescribed. Atmos' motion for summary judgment is denied, without prejudice to defendant's ability to establish that the date of removal was more than one year prior to the filing of suit.[5]

### III.   CONCLUSION

The motion for summary judgment filed by defendant Atmos

---

immovable property continues as long as the offending object remains on the premises, and the trespass is terminated only by the removal of the object wrongfully placed there." (citing 1 HARPER & JAMES, THE LAW OF TORTS § 1.7 (1974); PROSSER, THE LAW OF TORTS § 13, at 74-75 (4th ed. 1971)). The suit, which was filed within one year of the pole's removal, was held to be timely "as to all damages caused by the presence of the pole and transmission line during the entire time that the continuing trespass existed and defendant refused to move the structure." *Id.* at 267-68. The Supreme Court denied certiorari. *Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Company,* 350 So. 2d 897 (La. 1977).

[5]If Atmos establishes that the removal of the pipeline was not within the one year prescriptive period, the court will address Tujague's alternative argument on acknowledgment.

10

Energy Corporation is **DENIED**.

New Orleans, Louisiana, this  27th  day of July, 2006.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**